**RECORD NO. 14-4731**

In The

# United States Court Of Appeals

## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

### VLADIMIR PETROVICH MAZUR,
### a/k/a Vladimir Mazur,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
AT HARRISONBURG**

————————————

**BRIEF OF APPELLANT**

————————————

**David L. Parker**
**DAVID L. PARKER, PC**
**333 Neff Avenue**
**Suite A**
**Harrisonburg, VA  22801**
**(540) 574-4466**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF THE CASE ................................................................... 1

    A.    Course of Proceedings in the Court Below ........................................ 1

    B.    Statement of Facts ............................................................................. 3

SUMMARY OF THE ARGUMENT ........................................................... 5

ARGUMENT ............................................................................................... 8

    ISSUE I:  THERE WAS NOT SUFFICIENT EVIDENCE TO
    ESTABLISH THAT APPELLANT DISTRIBUTED AT LEAST
    EIGHTY GRAMS BUT LESS THAN ONE HUNDRED GRAMS
    FOR PURPOSES OF HIS SENTENCING GUIDELINES. ........................ 8

    A.    Standard of Review ........................................................................... 8

    B.    Argument ........................................................................................... 9

    ISSUE II:  THE TRIAL COURT ERRED IN NOT MAKING
    SPECIFIC FINDINGS ON THE DRUG WEIGHT AND
    SENTENCING LEVEL USED UPON APPELLANT'S OBJECTION
    TO THE PRESENTENCE REPORT. ...................................................... 17

    A.    Standard of Review ......................................................................... 17

    B.    Argument ......................................................................................... 18

CONCLUSION ......................................................................................... 20

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Gall v. United States*,
   552 U.S. 38 (2007)............................................................................9

*United States v. Booker*,
   543 U.S. 220 (2005)..........................................................................8

*United States v. Brooks,*
   524 F.3d 549 (4th Cir. 2008) .........................................................10

*United States v. Carter,*
   300 F.3d 415 (4th Cir. 2010) .....................................................9, 10

*United States v. Clay*,
   627 F.3d 959 (4th Cir. 2010) ...........................................................9

*United States v. Gilliam,*
   987 F.2d 1009 (4th Cir. 1993) .......................................................18

*United States v. Henderson*,
   58 F.3d 1145 (7th Cir. 1995) .........................................................11

*United States v. Hickman*,
   626 F.3d 756 (4th Cir. 2010) ...............................................7, 10, 11

*United States v. Hughes*,
   401 F.3d 540 (4th Cir. 2005) ...........................................................8

*United States v. McManus,*
   23 F.3d 878 (4th Cir. 1994) ......................................................17, 19

*United States v. Montes-Pineda*,
   445 F.3d 375 (4th Cir. 2006) ...........................................................9

*United States v. Morgan,*
    942 F.2d 243 (4th Cir. 1991) .......................................................................7, 18

*United States v. Rodriguez,*
    525 F.3d 85 (1st Cir. 2008)...........................................................................11

*United States v. Walton*,
    908 F.2d 1289 (6th Cir. 1990) ......................................................................11

**Statutes:**

18 U.S.C. § 922(j) ............................................................................................1

18 U.S.C. § 922(u) ...........................................................................................1

18 U.S.C. § 924(c)(1)(A) .................................................................................2

18 U.S.C. § 924(i)(1) ........................................................................................1

18 U.S.C. § 3742(a) ..........................................................................................1

21 U.S.C. § 841(a)(1).....................................................................................1, 2

21 U.S.C. § 841(b)(1)(A) .................................................................................1

21 U.S.C. § 841(b)(1)(C) .................................................................................2

21 U.S.C. § 846.................................................................................................1

28 U.S.C. § 1291 ..............................................................................................1

**Rules:**

Fed. R. App. P. 4(b) .........................................................................................1

Fed. R. Crim. P. 32.................................................................................. 17, 19-20

Fed. R. Crim. P. 32(c)(3)(D)........................................................................7, 18

**Sentencing Guidelines:**

U.S.S.G. § 2D1.1 ................................................................................................10

U.S.S.G. § 2D1.1(c) ..........................................................................................10

U.S.S.G. § 2D1.1(c)(8) ...............................................................................4, 10

U.S.S.G. § 2D1.1(c)(9) ......................................................................................10

U.S.S.G. § 2D1.1(c)(10) ....................................................................................10

U.S.S.G. § 2D1.1(c)(11) ....................................................................................10

## STATEMENT OF JURISDICTION

This is an appeal from the final judgment of the United States District Court for the Western District of Virginia, in a criminal case, pursuant to Federal Rules of Appellate Procedure.  Since FRAP Rule 4(b), Title 28 U.S.C. § 1291 provides that the Court of Appeals has jurisdiction from all final decisions of the United States District Court, the United States Court of Appeals for the Fourth Circuit has proper jurisdiction over this case.  Additionally, jurisdiction is invoked under Title 18 U.S.C. § 3742(a) as it pertains to appeals of sentences under the Sentencing Guidelines.  The defendant filed a timely Notice of Appeal from the final judgment.  See Federal Rules of Appellate Procedure Rule 4(b).

## STATEMENT OF THE CASE

### A.      Course of Proceedings in the Court Below

Appellant was indicted by a federal grand jury in Harrisonburg, Virginia on March 15, 2012, along with eleven alleged co-conspirators, for various drug trafficking and firearms violations.  (JA 17-23).  Appellant was charged on four of the thirteen total counts: Count One, conspiracy to distribute at least one thousand grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 21 U.S.C. § 846, Count Six, intentionally stealing a firearm from a licensed firearms dealer in violation of 18 U.S.C. §§ 922(u) and 924(i)(1), Count Seven, knowingly possessing a stolen firearm in violation of 18 U.S.C. § 922(j), and Count Eight,

knowingly possessing or using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (JA 17-20). Ten of the eleven alleged co-conspirators pled guilty, and Appellant and Denys Digalov pled not guilty and proceeded to trial. (JA 995-998). On March 4, 2013, following a six-day jury trial, Digalov was found not guilty of distribution of heroin, and Appellant was found guilty of a lesser included offense of Count One (conspiracy to distribute less than one hundred grams of heroin), and guilty of Counts Six, Seven and Eight. (JA 995). Mr. Mazur's final original Presentence Report with objections was submitted on July 31, 2013. (JA 992). His original sentencing hearing was held on August 13, 2013, sentencing him to a term of imprisonment of 81 months for counts 1, 6, and 7, all to be served concurrently, and 60 months consecutive for count 8. (JA 917). He filed a timely Notice of Appeal of his sentence on August 20, 2013. (JA 922). This Court reversed and remanded the case back to the District Court for further sentencing proceedings as to the amount of drugs Defendant was responsible for in an opinion dated May 14, 2014. (JA 924-930). A revised addendum to the Presentence Report was prepared and submitted with objections on June 23, 2014. (JA 1012). The second sentencing hearing was held September 11, 2014, sentencing Mazur to a term of imprisonment of 81 months for counts 1, 6, and 7, all to be served

concurrently, and 60 months consecutive for count 8. (JA 984-86). Appellant filed a timely Notice of Appeal of his sentence on September 17, 2014. (JA 991).

**B.    Statement of Facts**

This case involves a group of defendants involved in selling heroin in Philadelphia, Pennsylvania and Harrisonburg, Virginia. (JA 998). Two brothers, Ariel and Albert Batista, traveled from Harrisonburg to Philadelphia to obtain increasingly larger quantities of heroin from two different suppliers, Angel Ducvu (known to them as "Apo") and Victor Gonzalez-Rodriguez (known to them as "Moli"). (JA 998). The Batistas would then bring the heroin to the Harrisonburg area, where they used some and redistributed the rest of their supply. (JA 998). The Batistas sold to several people in the Harrisonburg area, all of whom were co-defendants in this case, namely Luis Rodriguez, Jr., Tello Angelina, Jovanny Torres, Rafael Lasalle Rosa, Alexander Ivashin, and Alexander Kubskiy. (JA 998). The Appellant in this case, Vladmir Mazur, was a heroin user from Broadway, Virginia, who purchased heroin solely from Luis Rodriguez, Jr. during the summer of 2011 from June until his arrest on September 2, 2011. (JA 998). Mazur received five bags of heroin the first day, then one bag of heroin a day for the last three weeks in June, but then escalated to receiving three to five bundles three times a week from Rodriguez during July and August 2011. (JA 999-1000).

In May 2011, Appellant broke into a marked Page County Deputy's vehicle and took a bulletproof vest, a machine gun and a shotgun. (JA 998). He wore the bulletproof vest and burglarized the Rockingham Cooperative on July 28 and August 4, 2011, stealing 32 firearms. (JA 998). Appellant traded two of these stolen firearms to Rodriguez for their equivalent value in heroin: a Sig Sauer .380 caliber semiautomatic handgun, and the shotgun stolen from the police vehicle. (JA 999). Thirty guns were found by police when they executed a search warrant for Appellant's property on September 2, 2011, after receiving a tip about where the stolen guns were. (JA 999). Appellant was arrested, waived his Miranda rights, and confessed to the robberies and the heroin use. (JA 999). On January 6, 2012, Albert and Ariel Batista were stopped by police on the way back to Harrisonburg from Philadelphia, and police discovered 120 grams of heroin in their vehicle and arrested them. (JA 999).

In the original Presentence Report, a base offense level of 24 was used according to the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(8), equating to distribution of more than 80 grams but less than 100 grams of heroin. (JA 1001). Appellant objected to this level both in writing and at the first sentencing hearing. (JA 1014). Appellant argued that calculating how much heroin was in each bag and how many bags he purchased during his participation in the conspiracy, the offense level should be lower, either 18 or 20. (JA 870-72). Appellant only

4

bought between 33 and 55 grams between June and August 2011. (JA 871). This Court reversed on that issue and remanded the case back to the district court for new sentencing to determine the correct drug weight. (JA 924).

A revised addendum to the Presentence Report was completed after the reversal, and the probation officer found Mazur to be responsible for 67.68 grams of heroin, resulting in a recommended base offense level of 22. (JA 1012-13). Appellant objected to this level in writing and again at the sentencing hearing. (JA 1014). At the second sentencing hearing, the court did not expressly adopt the Presentence Report and found that Mazur was responsible for at least eighty grams of heroin and a base offense level of 24. (JA 958-60).

## <u>SUMMARY OF THE ARGUMENT</u>

### ISSUE I

**THERE WAS NOT SUFFICIENT EVIDENCE TO ESTABLISH THAT APPELLANT DISTRIBUTED AT LEAST EIGHTY GRAMS BUT LESS THAN ONE HUNDRED GRAMS FOR PURPOSES OF HIS SENTENCING GUIDELINES.**

The evidence presented at trial was not sufficient to prove that Appellant conspired to distribute at least eighty grams of heroin. The Appellant's sole role in the drug trafficking conspiracy was in purchasing relatively small amounts of heroin from June 2011 until his arrest on September 2, 2011. (JA 954). His sole supply of heroin was from Luis Rodriguez. (JA 954). The district court held Mazur responsible for drugs sold in four different transactions: (1) Mazur's direct

purchases from Rodriguez, (2) Mazur's trades of guns for heroin from Rodriguez, (3) heroin sales from Rodriguez to Alex Ivashin and (4) sales from Albert Batista to other clients. (JA 958-59). The district court calculated that Mazur received 42 grams as a direct purchase from Rodriguez, and 9 grams from Rodriguez in exchange for guns, and that Mazur knew of at least 3 grams of heroin that Ivashin bought from Rodriguez, and at least 26 grams that Batista was distributing to dealers other than Rodriguez, for a total of at least 80 grams of heroin. (JA 959-60).

As for the first two transactions, the evidence presented at trial gives a lower drug weight than the court ultimately held Mazur responsible for at sentencing. Using the actual numbers that Mazur purchased from Rodriguez, Mazur directly bought 29.4 grams of heroin. (JA 555-57). Mazur received an additional six bundles of heroin in exchange for guns he provided Rodriguez, for an additional 1.8 grams of heroin. (JA 1012). There was not any evidence presented at trial on whether any of the transactions involving Ivashin or Batista were reasonably foreseeable to Mazur while he was a member of the conspiracy. He knew Ivashin bought heroin from Rodriguez before June 2011, but that was prior to Mazur's involvement in the conspiracy. (JA 955-56). As for Batista, he had only met him once briefly at Rodriguez' house and had no knowledge of his dealings outside of Batista's heroin sales to Rodriguez. (JA 949-951). Therefore, the district court

should have only found Mazur responsible for distributing 31.2 grams of heroin total, rather than 80 grams, and imposed a base level of 18 rather than 24 when calculating Appellant's sentencing guidelines range.

The court cannot use speculative numbers to determine the drug quantity attributable to a defendant. Rather, the calculations used to determine the drug quantity must find specific support in the record, and courts should be "conservative" and "cautious" when determining this approximation. *United States v. Hickman*, 626 F.3d 756, 769 (4th Cir. 2010).

**ISSUE II**

**THE TRIAL COURT ERRED IN NOT MAKING SPECIFIC FINDINGS ON THE DRUG WEIGHT AND SENTENCING LEVEL USED UPON APPELLANT'S OBJECTION TO THE PRESENTENCE REPORT.**

In order to comply with *Federal Rule of Criminal Procedure 32(c)(3)(D)*, if a defendant objects to the facts included in the Presentence Report, the judge at sentencing must answer his objection by either making specific findings of fact regarding the controverted facts or by stating that those controverted facts are not being considered to determine the sentence. If the objection is of the drug weight that the defendant is being held responsible for, then the court must make specific findings to explain how they determined the proper drug weight, or it must expressly adopt the recommended findings on drug weight in the presentence report. *United States v. Morgan,* 942 F.2d 243, 245 (4th Cir. 1991).

At sentencing, the judge did not make any specific findings about how he reached the number of 80 grams of heroin for which Appellant was being held responsible. The court stated that it reached 80 grams by adding up 42 grams in Mazur's direct purchases from Rodriguez, 9 grams in the guns-for-drugs swaps, 3 grams for Ivashin's purchases and 26 grams for Batista's sales to dealers other than Rodriguez, but did not make specific findings on how it determined each of those amounts. (JA 959-60). It is unclear from the record what the court believed the appropriate drug weight per bag was. Appellant advocated for a drug weight of 0.0275 grams per bag, while the Presentence Report used 0.03 grams per bag, and the government advocated for 0.1 grams per bag at sentencing. (JA 953-57). The court did not expressly adopt the revised Presentence Report, which gave a total drug weight of 67.68 grams of heroin. (JA 1013).

## ARGUMENT

### ISSUE I

**THERE WAS NOT SUFFICIENT EVIDENCE TO ESTABLISH THAT APPELLANT DISTRIBUTED AT LEAST EIGHTY GRAMS BUT LESS THAN ONE HUNDRED GRAMS FOR PURPOSES OF HIS SENTENCING GUIDELINES.**

#### A.    Standard of Review

Sentences imposed by the district court are normally reviewed for "unreasonableness." *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Hughes*, 401 F.3d 540, 546-47 (4th Cir. 2005). Sentences can be both

procedurally and substantively unreasonable. *United States v. Montes-Pineda*, 445 F.3d 375, 378 (4th Cir. 2006). If the district court improperly calculates the Guideline range, the sentence may be procedurally unreasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Clay*, 627 F.3d 959, 965-66 (4th Cir. 2010). Because a district court's findings on drug quantity are factual in nature, they are reviewed for clear error. *United States v. Carter,* 300 F.3d 415, 425 (4th Cir. 2010).

### B.    Argument

The Appellant's sole involvement in the drug trafficking operation was in purchasing small amounts of heroin from June 2011 until his arrest on September 2, 2011. (JA 954). His sole supply of heroin was from Luis Rodriguez. (JA 954). Doing the math based on the amounts Appellant purchased and how many grams of heroin were in each bag, the total amount of heroin Appellant was responsible for was less than the eighty grams the district court attributed to him. Therefore the Court should have imposed a base level of 18 or 20 rather than 24 when calculating Appellant's sentencing guidelines range.

Sentences are imposed using a base level determined by the particular offense the defendant was convicted of and then making upwards or downwards departures from it based on aggravating or mitigating factors of the defendant and the offense. For narcotics distribution cases, the type of drug and the total weight

9

of that drug that was distributed determine the base offense level for sentencing, using the Drug Quantity Table under U.S.S.G. § 2D1.1(c). For heroin, distribution of at least eighty but less than one hundred grams results in a base offense level of 24; distribution of at least sixty but less than eighty grams results in a base offense level of 22; distribution of at least forty but less than sixty grams results in a base offense level of 20; and distribution of at least twenty but less than forty grams results in a base offense level of 18. U.S.S.G. § 2D1.1(c)(8-11).

The government must prove the drug quantity attributable to the defendant by a preponderance of the evidence. *United States v. Brooks,* 524 F.3d 549, 561-62 (4th Cir. 2008). In determining the amount of drugs attributable to a defendant in cases where "there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 *cmt. n.5.* The court generally relies on the presentence report to determine the drug weight, unless the information in the presentence report is shown to be inaccurate or unreliable. *Carter* at 425. Drug quantities must find specific support in the record. *Hickman* at 769. This Court has previously allowed courts to multiply the number of drug transactions by an average weight-per-transaction to reach a likely estimate of the drug weight. *Id*. But this and other appellate courts have emphasized that when undertaking this calculation, the district courts must be "conservative" in their estimates and

approximations. *Hickman* at 769 (quoting *United States v. Rodriguez*, 525 F.3d 85, 107-08 (1st Cir. 2008) (using "conservative estimate[s]") and *United States v. Henderson*, 58 F.3d 1145, 1151 (7th Cir. 1995) ("make conservative approximations"). Finally, *Hickman* urges "when choosing between a number of plausible estimates of drug quantity a court must err on the side of caution." *Id*. (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)).

Here, the only evidence on the drug weight attributable to Appellant comes from the statements and testimony made by Luis Rodriguez, who was Appellant's sole supplier of heroin. (JA 865-66). No narcotics were found on Appellant or in his property when police executed a search warrant. The revised Presentence Report alleges that Appellant was purchasing one to three bags of heroin every couple of days in June 2011 for a total of 20 bags and between three to five bundles of heroin from Rodriguez three times a week from July 2011 until September 2, 2011, for a total of 96 bundles. (JA 1012). The government should have used that as the basis for their calculations in the sentencing hearing. A bundle typically contains between ten and fifteen bags of heroin. (JA 289). The bundles Rodriguez was selling contained ten individual bags of heroin. (JA 535). Appellant bought twenty bags of heroin in June, then 960 bags over the next two months, for a total of 980 bags purchased from Rodriguez during Mazur's time he was involved in the conspiracy. (JA 555-557).

It is unclear from the court's opinion what drug weight amount they were actually using per bag. The revised addendum to the Presentence Report used a measurement of 0.03 grams per bag, which was the highest possible per-bag amount proven by the evidence at trial. (JA 1012). Heroin that originated from Luis Rodriguez' supplier, Victor Gonzalez-Rodriguez, was confiscated by police in three separate instances. First, Virginia State Police confiscated heroin during a traffic stop of Jovanny Torres' vehicle.[1] (JA 497). Second, Virginia State Police confiscated heroin during a traffic stop of Ariel Batista's vehicle. (JA 576). And finally, Philadelphia police orchestrated a controlled buy of heroin from Gonzalez-Rodriguez using Ariel Batista as a cooperating witness. (JA 618). The bags of heroin confiscated from the traffic stop of Jovanny Torres contained an average weight of 0.0275 grams per bag. (JA 519). The bags of heroin confiscated from the traffic stop of Ariel Batista, contained an average of 0.0234 grams per bag. (JA 612-13). Officer Charles Myers, from Philadelphia, Pennsylvania estimated that the bags he confiscated from the controlled buy of Gonzalez-Rodriguez contained an average of 0.03 grams of heroin. (JA 313). The amount per bag varied, but the average of the evidence introduced at trial was approximately 0.0275 grams per bag. (JA 953-54).

---

[1] Torres was supplied his heroin by "Mexico," also known as Luis Rodriguez. (JA 409-10).

12

Because there is specific evidence in the record about how many bags were in each bundle and how many grams of heroin were in each bag, these numbers should be used to calculate the attributable drug quantity. If the Appellant purchased four bundles three times a week for two months, that equals ninety-six bundles. Since a bundle contained ten bags, the total number Appellant purchased for those two months would be 960 bags. Adding in the twenty bags purchased in June 2011, the total number of bags Appellant purchased during his involvement with the conspiracy would be 980 bags of heroin.[2] Multiplying that total number of bags by the 0.03 grams per bag average equals a total quantity of 29.4 grams.[3]

At sentencing, the government came up with a total of 54 grams of heroin from the transactions from Rodriguez to Mazur, the guns-for-drugs swaps between Rodriguez and Mazur, and Alex Ivashin's buys from Rodriguez that Appellant

---

[2] Rodriguez testified that Mazur bought between three and five bundles of heroin three times a week in July and August 2011. (JA 555-57). Four bundles three times a week was the amount used in the revised Presentence Report, as it is the average between three and five. (JA 1012). Viewing the evidence in the light most favorable to the government, if the court found Mazur purchased five bundles of heroin three times a week, for eight weeks, plus the 20 bags in June, the total would be 1220 bags for a quantity of 36.6 grams of heroin. This amount is still well below the 54 grams the court found Mazur to be responsible for at sentencing.
[3] Appellant asserts that a weight of 0.0275 grams per bag is the highest weight of heroin proven by scientific analysis in this case. The 0.03 grams per bag measurement used in the addendum to the Presentence Report was not a number proven scientifically, but was merely the estimate of Officer Myers on heroin weights in Philadelphia. Because it was the quantity used in the revised Presentence Report, however, Appellant will use the measurement of 0.03 grams per bag in this brief.

knew about.  (JA 945-46).  The government claimed that Ivashin's conduct in

distributing heroin was reasonably foreseeable to Appellant, and thus Appellant

could be found responsible for it for sentencing.  (JA 945-46).  The only evidence

presented that Mazur knew Rodriguez was dealing heroin to Ivashin came before

Mazur was a member of the conspiracy.  Mazur met Rodriguez for the first time

when Rodriguez came to Ivashin's apartment to sell Ivashin heroin.  (JA 537-38).

Mazur was just in Ivashin's apartment, along with several others.  Mazur did not

purchase the heroin from Rodriguez, but merely used some of what Ivashin

purchased.  (JA 954-55).  Mazur's involvement in the conspiracy did not begin

until he met with Rodriguez in June 2011 and began purchasing heroin from him

for personal use.  Any purchases that Mazur knew Ivashin made before this date

could not count for purposes of sentencing because they were made before the

conspiracy as to Mazur began.  Any buys Ivashin made from Rodriguez between

June 2011 and September 2, 2011 were not proven at trial or sentencing to be

reasonably foreseeable to Mazur.  There was never any evidence presented that

Mazur knew or would be likely to know if or how much Rodriguez was

distributing to Ivashin after Mazur's involvement in the conspiracy began, so any

drug weight attributed to Mazur is purely speculative.

As for the guns-for-drugs swaps, the Presentence Report alleges that

Appellant gave Rodriguez two firearms initially in exchange for two bundles of

heroin, totaling 0.6 grams, and then traded between 25 and 30 firearms for four

bundles of heroin, totaling 1.2 grams. (JA 1012). The court believed that Mazur

was expecting to get one bundle of heroin per gun, and held him responsible for 9

additional grams, but the evidence presented at trial was on how much heroin

Mazur actually received for the transaction. (JA 551-54). There was no testimony

at trial or in the grand jury that Mazur ever met with Rodriguez to obtain any

additional heroin in exchange for the guns other than the six total bundles he had

already received. (JA 955). Rodriguez was asked numerous times at trial how

much heroin he sold to Mazur, and he never stated that he sold more than the six

bundles to Mazur in exchange for all the guns. (JA 551-54). Similarly, Mazur was

asked about these guns-for-drugs swaps at the grand jury, and he only testified that

he received these six bundles and did not ever testify that he followed up with

Rodriguez to receive any additional heroin in exchange for the guns. (JA 1016).

Any amount over the 1.8 total grams of heroin is speculative and was not proven

by a preponderance of the evidence, so it should not be attributed to the Appellant

for sentencing purposes.

The remaining 26 grams of heroin that the court attributed to Mazur was

based on the court's pure speculation of Mazur's knowledge of Albert Batista's

activities. (JA 958-960). At sentencing, the trial court said that since Mazur met

Albert Batista briefly one time, and knew that he was bringing heroin from

15

Philadelphia down to Rodriguez to distribute, that Mazur must have known that Batista was distributing heroin to other people at the same rate he sold to Rodriguez. (JA 959). In the court's opinion, this distribution to dealers other than Rodriguez came out to at least 26 grams of heroin between June and September 2, 2011. (JA 959). There was no "clear support" for this number given at sentencing. The only connection between Mazur and Batista was that Rodriguez told Mazur that Batista was his supplier. (JA 558). There was never any evidence presented at trial that Mazur knew anything about Batista's actions, or would have reason to know about how much Batista was dealing, or to whom, other than Rodriguez. Mazur was not a major player in the conspiracy. Batista testified that he did not know who Mazur was, and only met him briefly one time at Rodriguez' house. (JA 372-73). Any findings the court made that Mazur was responsible for any other transactions made by Albert Batista are pure speculation with no basis on the record, much less proven by a preponderance of the evidence.

Viewing the evidence in the light most favorable to the prosecution, and using the high end of the calculations, with 10 bags per bundle, 0.03 grams of heroin per bag, and assuming that Mazur purchased five bundles three times a week for two months and twenty bags in June, the amount purchased is still only 45.6 grams from Rodriguez, and 1.8 grams on the guns for drugs swaps, for a total of 47.4 grams total that can be proven by a preponderance of the evidence. There

was no evidence presented as to what Ivashin buying "in bulk" meant, or how much, if any, of these transactions could be reasonably foreseeable to Mazur during his involvement in the conspiracy.  There also was no more than mere speculation presented that Batista was distributing to anyone other than Rodriguez, or if he was, then how much he was distributing, or whether that would have been reasonably foreseeable to Mazur, since he only met him briefly one time. Therefore the government cannot provide "clear support" for their assumption that Mazur distributed or conspired to distribute at least eighty grams of heroin by a preponderance of the evidence.  The numbers the government used to calculate the attributable drug weight are speculative and were contradicted by the evidence at trial.

## ISSUE II

### THE TRIAL COURT ERRED IN NOT MAKING SPECIFIC FINDINGS ON THE DRUG WEIGHT AND SENTENCING LEVEL USED UPON APPELLANT'S OBJECTION TO THE PRESENTENCE REPORT.

### A.    Standard of Review

A district court is bound to follow *Federal Rule of Criminal Procedure 32* when making findings about a defendant's sentencing levels.  *United States v. McManus,* 23 F.3d 878, 886 (4th Cir. 1994).  A district court's application of *Federal Rule of Criminal Procedure 32* is reviewed under the "clearly erroneous" standard.  *Id.* at 882.

**B.**    **Argument**

According to *Federal Rule of Criminal Procedure 32(c)(3)(D)*:

If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

When the defendant disputes the amount of drugs for which he is to be held responsible, "the district court must make an independent resolution of the factual issue at sentencing." *United States v. Gilliam,* 987 F.2d 1009, 1013 (4th Cir. 1993).  With regards to determining the drug weight for sentencing, the required finding of the district court may either be made by the court's separate presentation of its finding as to each contested matter or by the court's express adoption of the recommended findings as to the drug weight from the presentence report. *Morgan* at 245.

Upon remand, the probation officer issued an addendum to the original presentence report, incorporating the mandate of this Court, in which they recommended that Mazur was responsible for 67.68 grams of heroin and a base offense level of 22.  (JA 1013).  Appellant properly objected to this drug weight, meaning the district court was required by *Federal Rule of Criminal Procedure 32(c)(3)(D)* to either make specific findings as to the alleged factual inaccuracy of

18

the drug weight or state that this fact was not taken into account at sentencing. *McManus* at 886-87.

At sentencing, the district court found that Mazur was responsible for distributing at least 80 grams of heroin. (JA 959). Of that 80 grams, the court attributed 54 grams to Mazur as the result of Rodriguez' distribution to Mazur, Rodriguez' distributions to Alex Ivashin, and the guns-for-drugs swaps between Rodriguez and Mazur. (JA 960). For the remaining 26 grams to reach the 80 gram threshold, it merely stated that it must have been reasonably foreseeable to Mazur that Albert Batista had other customers that he distributed to at roughly the same amount he distributed to Luis Rodriguez. (JA 958-59). The judge never specifically explains how he came up with the total of 54 grams. He did not expressly adopt the addendum to the Presentence Report regarding the drug weight for which Appellant was responsible, so it is unclear what unit of measurement the court was using to calculate grams per bundle. And while he explains that 42 grams came from the direct buys from Rodriguez, 3 grams were distributed to Ivashin and 9 grams came from the guns for drugs trades with Rodriguez, he never expressly states how he arrived at those numbers. (JA 959-60). The district court never made a determination on Appellant's objections of the weight of drugs for which he was held responsible. They could have satisfied *Federal Rule of*

19

*Criminal Procedure 32* by expressly adopting the Presentence Report or making specific findings of their own, but they did neither in this case.

As the district court did not properly apply *Federal Rule of Criminal Procedure 32* at sentencing, the trial court was clearly erroneous, and this Court should reverse Appellant's sentence and remand it to the district court for further proceedings.

## CONCLUSION

The issues in this case warrant reversal. The court committed several substantial errors in sentencing that affected the fairness and validity of Mr. Mazur's sentence. There was not sufficient evidence to prove that Appellant distributed at least eighty grams of heroin, and the court did not make sufficient specific findings on the drug weight. Accordingly, Appellant's sentence for conspiracy to distribute between 80 and 100 grams of heroin should be reversed and a lower sentence imposed commiserate with what Appellant was actually responsible for.

**WHEREFORE**, for the reasons stated above, Appellant respectfully requests this Honorable Court to reverse his sentence.

/s/ David L. Parker
David L. Parker
David L. Parker, P.C.
333 Neff Avenue, Suite A
Harrisonburg, VA 22801
*Counsel for Appellant*

20

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>4,895</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

                                 <u>/s/ David L. Parker        </u>
                                   David L. Parker

Dated: November 14, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on November 14, 2014, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send

notice of such filing to the following registered CM/ECF users:

> Grayson A. Hoffman
> OFFICE OF THE
>   UNITED STATES ATTORNEY
> 116 North Main Street
> Harrisonburg, VA  22802
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/ Tyler E. Wood
> Tyler E. Wood
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA  23219